UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID LASNICK, et al., | : | CIVIL CASE NO. |
|     Plaintiffs, | : | 3:10-cv-345 (JCH) |
| | : | |
| v. | : | |
| | : | |
| JOHN ADAMS MORGAN, et al., | : | DECEMBER 15, 2011 |
|     Defendants. | : | |

**RULING RE: ADMISSIBILITY OF WRITTEN OUT-OF-COURT STATEMENTS**

**I.     INTRODUCTION**

Plaintiffs' counsel submitted a letter to the court on October 25, 2011, asking for an opportunity to brief and argue the admissibility of a pair of emails produced during discovery: one sent to defendant Robert Kercher by Cyrille Seiler, and another sent to Kercher by Andrea Guerin. After receiving briefs from both parties, the court held oral argument on November 17, 2011.

At the close of oral argument, the court announced that it would delay decision on whether to admit the statements, pending an effort by the plaintiff's counsel to contact declarant Seiler by email and confirm whether he was available for a deposition. On December 1, 2011, the plaintiff's counsel submitted a second letter to the court, reporting that Mr. Seiler had not yet responded to an email sent on November 21, 2011. A copy of the email and a delivery receipt were attached.

For the following reasons, the court finds that both emails are admissible.

**II.    BACKGROUND**

This case arises from the death of Angelita Santa Ana on March 10, 2008, following a stay aboard a yacht called the Jamaica Bay. Based upon the parties' memoranda, the following facts appear to be undisputed: Santa Ana worked as a

1

housekeeper and cook for defendant Robert Adams Morgan. Morgan was managing partner of defendant Bay Marshal Islands, LLC, which owned the Jamaica Bay. Defendant Robert Kercher was captain of the Jamaica Bay. According to the plaintiffs, Santa Ana, who died of complications arising from streptococcal pneumonia, would likely have survived had the defendants sought appropriate medical care for her at an earlier date.

After the filing on this suit, Kercher contacted Cyrille Seiler and Andrea Guerin by email, requesting their recollections of the days leading up to Santa Ana's death. During the relevant time period, Cyrille Seiler was chief steward of the Jamaica Bay and Andrew Guerin was a ship steward. The responses of Seiler and Guerin are the subject of the current evidentiary dispute.

### III. DISCUSSION

#### A. Admissibility of Andrea Guerin's Email Under Rule 801(d)(2)(D)

Under Rule 801(d)(2)(D) of the Federal Rules of Evidence, a statement is not hearsay if it is offered against a party and was made by that party's agent or servant concerning a matter within the scope of the agency or employment, during the existence of the relationship. Fed. R. Evid. 801(d)(2)(D). While the defendants do not dispute that Guerin is an employee of the defendants or that she sent the email while employed by them, they argue that the statements contained in the email do not relate to a matter within the scope of her employment. Def.'s Mem. in Opp. at 14.

To support their argument, the defendants point to Wilkinson v. Carnival Cruise Lines, in which the Eleventh Circuit found that a ship steward's statement regarding a malfunctioning automatic door was not related to the scope of his employment, in part

2

because his duties involved housekeeping as opposed to mechanical or engineering work.  920 F.2d 1560, 1566 (11th Cir. 1991).  In Wilkinson, however, the court also emphasized that the steward in question was "not permitted to be in the passenger area near the pool where the sliding glass door that injured [the plaintiff] was located." Id. at 1563.  Here, Guerin was not forbidden from visiting Santa Ana's quarters. On the contrary, her housekeeping duties appear to have required her to visit that part of the ship.  See, e.g., Mem. in Supp., Ex. 7 [hereinafter "Guerin Email"] ("Interior crew checked on [Santa Ana] frequently as we were always down there taking back laundry").

Further, while it is true that Guerin "did not have certification to provide medical care," Mem. in Opp. at 17, the observations contained in her email are not attempts to diagnose Santa Ana's condition or specify what an appropriate treatment might have been.  They are simply lay observations that Guerin made while carrying out her housekeeping duties.  See, e.g., Guerin Email ("Her sheets were changed everyday as she was sweating.").  Accordingly, the court finds that the content of Guerin's email is related to a matter within the scope of her employment and is admissible under Rule 801(d)(2)(D).[1]

    B.    <u>Admissibility of Cyrille Seiler's Email Under Rule 807</u>

Under certain circumstances, statements not covered by other hearsay exceptions, but having "equivalent guarantees of trustworthiness," may still be admitted

---

[1] The court also rejects the defendants' alternative argument that Guerin's email should be excluded under Rule 403 because its probative value "is outweighed by concern that the statement will mislead the jury." Mem. in Opp. at 17.  More specifically, the defendants suggest that, because Guerin wrote the email more than two years after Santa Ana's death, there is a "danger that the lapse in time has affected [her] recollection of events underlying the incident." Id. This "danger," however, is entirely speculative.  Defendants do not point to any inaccuracies in the email or to any other evidence that would suggest Guerin's memory is faulty.  Many witnesses provide evidence long after an event they observed occurred.

3

under Rule 807, also known as the residual exception.  Fed. R. Evid. 807.  "To be admissible under Rule 807, the evidence must be (1) trustworthy, (2) material, (3) more probative than other available evidence, and must fulfill, (4) the interests of justice, and (5) notice."  Silverstein v. Chase, 260 F.3d 142, 149 (2d Cir. 2001).  Rule 807 is used "very rarely, and only in exceptional circumstances." Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991).

      i.      Trustworthiness

In assessing the trustworthiness of a statement for purposes of Rule 807, a court should be mindful of the "four classes of risk peculiar to [hearsay] evidence: those of (1) insincerity, (2) faulty perception, (3) faulty memory, and (4) faulty narration."  Schering Corp. v. Pfizer Inc., 189 F.3d 218, 232 (2d Cir. 1999).  While "a hearsay statement need not be free from all four categories of risk to be admitted under Rule 807," id. at 233, it must "possess a reliability commensurate with that found in other statements that are admitted under exceptions to the hearsay rule," Steinberg v. Obstetrics-Gynecological & Infertility Group, P.C., 260 F. Supp. 2d  492, 496 (D. Conn. 2003) (citing Schering).

The defendants argue that the Seiler email contains clear indicia of faulty memory.  To support this contention, they cite multiple instances in the email in which Seiler inaccurately recalls the date on which a particular event occurred.  See, e.g., Mem. in Opp. at 7 ("[M]r. Seiler states that, during the afternoon of the fifth day of the trip (March 4), a doctor came onboard to visit Ms. Santa Ana.  The evidence, however, demonstrates that the doctor came to visit Ms. Santa Ana on the morning of March 7, or the eighth day of the trip."); id. at 7-8 (noting that, while Mr. Seiler claims Santa Ana was evacuated to Guadalope less than two days after being admitted to a hospital in St.

4

Marin's, Santa Ana was actually transported "on the same day she was admitted at the hospital in St. Martin's.").

The court does not find, however, that Seiler's faulty recollection of the dates of Santa Ana's doctor visit and hospital admission necessarily suggests unreliability with regard to the points for which the plaintiff intends to rely on the email—namely, "[Seiler's] recollection that Ms. Santa Ana was ill within hours after her arrival on the Jamaica Bay, and [his recollection of Santa Ana's] difficulties taking care of the children aboard the vessel."  Mem. in Supp. at 8.

First, Seiler explicitly prefaces the paragraphs containing the inaccuracies cited by defendants with a warning that he "can't really recall the dates." See, e.g., Mem. in Supp., Ex. 6 [hereinafter "Seiler Email"] at 1.  He offers no such caveat to the first few paragraphs of the email, which suggests that his memory of the events described in those paragraphs—a conversation with Santa Ana during her first day on the ship and observations of Santa Ana's difficulty caring for the children during her first two days onboard—is clearer.  It seems entirely plausible to the court that a steward could fail to remember whether a passenger was visited by a doctor on the fifth or seventh day of her trip while still accurately recalling his "surprise" when the same passenger told him she felt unwell only hours after coming aboard a docked vessel. Seiler Email at 1.

Second, the defendants will have an opportunity to point out the errors in Seiler's email—as well as his admission that he cannot recall the dates of some events—to the jury, who will be able to consider those facts when determining how much weight to afford Seiler's statement.

5

Finally, the court reiterates that, to be found sufficiently trustworthy under Rule 807, a hearsay statement need only possess "a reliability commensurate with that found in other statements that are admitted under exceptions to the hearsay rule." Id. at 233. As the plaintiff points out, if Seiller were still employed by the defendants, his email, like Guerin's, would be admissible under Rule 801(d)(2)(D). Mem. in Supp. at 8. Employee statements are liberally admitted under Rule 801(d)(2)(D) due to an assumption that "an employee is usually the person best informed about certain acts committed in the course of his employment." Pappas v. Middle Earth Condominium Ass'n, 963 F.2d 534, 537 (2d Cir. 1992). The rule is limited to statements made during the course of the employment relationship, however, on the premise that, "while still employed an employee is unlikely to make damaging statements about his employer, unless those statements are true." Id. In other words, one is considered more likely to make untruthful, damaging statements about a former boss than about a current boss.

Though Seiler was no longer employed by Jamaica Bay at the time he wrote the email in question, the court finds no reason to suspect him of insincerity. The email was not solicited by the plaintiffs for use in this litigation; instead it was composed in response to a request from one of the defendants, Captain Kercher. Further, as the defendant points out, the email features no criticism of Kercher or the other defendants; on the contrary, it seems designed to justify Kercher's response to Santa Ana's illness. See, e.g., Seiler Email at 3 ("Now what I can say, is that all the instructions you gave from the beguining [sic] of the event, were clear and direct. As soon as I have informed you of Angie medical condition at the very beguining [sic], you specifically ordered the interior crew and I to keep a close look on Angie."). Additionally, defense counsel

conceded at oral argument that they have no reason to believe Seiler feels antagonism toward the defendants.

Accordingly, the court finds that the Seiler email possesses a reliability commensurate with that of statements admitted under Rule 801(d)(2)(D) and, further, that it is sufficiently trustworthy for purposes of Rule 807.

ii. Materiality & Probative Importance

The plaintiffs contend, and the defendants agree, that "the timeline of Ms. Santa Ana's symptoms and illness is a critical factor in the case." Mem. in Supp. at 10; see also Mem. in Opp. at 11. Thus, it is clear that the Seiler's statements regarding the onset of Santa Ana's illness would be "offered as evidence of a material fact." Fed. R. Evid. 807(a)(2). The defendants argue, however, that "the plaintiffs fail to provide any evidence that the statement is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Mem. in Opp. at 12 (citing Fed. R. Evid. 807(a)(3)). Specifically, the defendants suggest that medical records would be just as probative with regard to the timeline of events.

The court disagrees. As discussed earlier, the "key facts" of Seiller's email for the plaintiffs are his recollection that Santa Ana told him she felt ill within hours of boarding the Jamaica Bay and his recollection that she had difficulty taking care of the children in her early days aboard the ship. Mem. in Supp. at 10. These observations would not be captured in the medical records. As such, the court finds that, with regard

7

to the onset of Santa Ana's symptoms, Seiler's email is more probative than any other evidence reasonably available to the plaintiffs.[2]

       iii.    Interests of Justice

Finally, the court finds that admitting Seiler's email "will best serve the purposes of the hearsay rules and the interests of justice." Fed. R. Evid 807(a)(4). Seiler is believed to be living abroad. His current location is unknown, and the only contact information defendants can provide for him is an email address.[3] The plaintiffs attempted to contact Seiler by email but received no response. This is not, then, a case in which the plaintiffs simply do not want to incur the expense of flying in an out-of-state declarant for live testimony. Here, the plaintiffs do not have the <u>option</u> of procuring live testimony. <u>Contra</u> <u>United States v. Sinclair</u>, 74 F.3d 753, 759 (7th Cir. 1996) (holding that the high cost of flying in an out-of-state witness does not, standing alone, justify use of Rule 807).

In summary, the court finds (1) that Seiler's email has equivalent circumstantial guarantees of trustworthiness to other statements deemed admissible under the hearsay rules; (2) that it is offered as evidence of a material fact; (3) that it is more probative on the point for which it is offered than any other evidence that the plaintiffs can obtain through reasonable efforts; (4) that admitting the email into evidence will best

---

[2] The court notes that its finding of probative importance does not extend to Seiler's recollection of the dates on which later events, such as the doctor's visit to the Jamaica Bay and Santa Ana's transfer to a Saint Martin hospital, occurred. At oral argument, the plaintiffs did not dispute that Seiler's memory was faulty on these points. Further, even if the email was error free, it would not be more probative than medical records with regard to the timing of formal medical treatment. Accordingly, the plaintiffs may not rely on Seiler's statements regarding the dates of such treatment. The defendants, on the other hand, may cite these statements for impeachment purposes.

[3] In their Memorandum, the defendants suggest that plaintiff also have access to a telephone number for Seiler. Mem. in Opp. at 12. At oral argument, however, they conceded that an email address was the only known means of contact.

serve the purposes of the hearsay rules and the interests of justice; and (5) that the plaintiffs gave the defendants adequate notice of their intent to offer the email into evidence.[4]

## IV.    CONCLUSION

For the foregoing reasons, the court finds that Andrea Guerin's email to Robert Kercher is admissible under Rule 801(d)(2)(D) of the Federal Rules of Evidence, and that Cyrille Seiler's email to Kercher is admissible under Rule 807.  The court notes that this Ruling does not address the alleged presence of "double hearsay" and other inadmissible statements <u>within</u> the Guerin and Seiler emails, because the plaintiffs have offered to redact any such statements prior to the documents' admission.  <u>See</u> Pl.'s Reply (Doc. No. 33) at 1. The plaintiffs are ordered to submit proposed redactions to the defendants within fourteen (14) days of the issuance of this ruling.  The defendants shall file any objections to the plaintiffs' proposal within seven (7) days of receipt.

**SO ORDERED**

Dated at Bridgeport, Connecticut, this 15th day of December, 2011.


       /s/ Janet C. Hall
      Janet C. Hall
      United States District Judge

---

[4] The defendants do not dispute that the plaintiffs satisfied the notice requirement of Rule 807. Mem. in Opp. at 5.